# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Shekiela Shenell Stringer, | ) |
| Plaintiff, | ) Civil Action File No.: |
| v. | ) |
| Enhanced Recovery Company, LLC, | ) **COMPLAINT** |
| | ) **WITH JURY TRIAL DEMAND** |
| Defendant. | ) |

## PRELIMINARY STATEMENT

This action for damages is based on Defendant's false reporting on Plaintiff's credit file and/or consumer reports and failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

## PARTIES

1. Plaintiff, Shekiela Shenell Stringer, is a natural person who resides in Cobb County, Georgia.

2. Plaintiff is allegedly obligated to pay a consumer debt and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

1

3. Defendant, Enhanced Recovery Company, LLC, is a limited liability corporation formed under the laws of the State of Delaware, headquartered in the State of Florida, and registered to do business in the State of Georgia. Defendant may be served with process via its registered agent, C T Corporation System, at 289 South Culver Street, Lawrenceville, Georgia 30046-4805.

4. Defendant uses interstate commerce and/or mail in its business. The principal purpose of Defendant's business is the collection of consumer debts. Defendant also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, claims, pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

7.  Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because Defendant maintains an agent for service of process within the Atlanta Division.

### Factual Allegations Derived from Plaintiff's Bankruptcy Case

8.  On December 20, 2016, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 16-72648-pmb (the "Bankruptcy Case").

9.  In Schedule F of her Bankruptcy Petition, Plaintiff listed Defendant as having an unsecured claim in the amount of $161.00 (the "Debt").

10. Defendant was served with notice of Plaintiff's bankruptcy case and its inclusion as a creditor by the Bankruptcy Noticing Center on December 24, 2016.

11. A true and correct copy of the Notice served upon Defendant is attached hereto as Exhibit 1. (Address matrix highlighted for ease of reference)

12. On February 27, 2017, Plaintiff filed her Chapter 13 Plan in accordance with 11 U.S.C. § 1322, setting forth her proposed treatment of the Debt owed to Defendant, including detailed payment terms.

13. On March 16, 2017 the Bankruptcy Court issued an order confirming Plaintiff's Plan.

14. Including the Notice of Commencement of case, referenced above, Defendant has been served with at least three separate notices that the debt it is seeking to collect against the Plaintiff is included in Plaintiff's bankruptcy case.

15. The Bankruptcy Case is currently pending, and Plaintiff continues to substantially perform under the terms of her Confirmed Plan.

**Factual Allegations Pertinent to CDIA and Metro 2 Reporting Standards**

16. The reporting of consumer credit information by credit reporting agencies ("CRAs") and data furnishers is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm*.

17. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both

federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

18. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

19. To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

20. The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers, such as the Defendant, to assist each in maintaining compliance with FCRA regulations.

21. Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

22. In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance

requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

23.     The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *Id.*

24.     The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

25.     At all times relevant hereto Defendant warranted and or represented to TransUnion that it had adopted and implemented the Metro 2 format for its reporting of consumer data and would otherwise comply with Metro 2 and CDIA guidelines in its reporting of consumer information.

26.     Defendant has, at all times relevant hereto, incorporated the Metro 2 format for reporting consumer information into its own internal policies and procedures.

27.     The Defendant has adopted the Metro 2 reporting format into its own practices and procedures.

28. Defendant has actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendant, assume Defendant's compliance with Metro 2 standards in reporting consumer information.

29. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the information in the consumer reports is being reported in compliance with Metro 2 standards, and thus interpret that information accordingly.

30. As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumers, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

**Factual Allegations Derived from Defendant's Reporting Of Plaintiff's Account to TransUnion**

31. On or about August 23, 2017, Plaintiff obtained a copy of her consumer report as published by TransUnion.

32. That report contained erroneous information as provided by Defendant and as published and reported by TransUnion.

7

33. Specifically, the report shows the status of the Debt as "in collections," with a past due balance of $161.00. .

34. The relevant portion of the Defendant tradeline appeared in the August 23, 2017, TransUnion report as follows:

```
ENHANCED RECOVERY COMPAN  #8753****
P O Box 57547
JACKSONVILLE, FL 32241
(904) 680-2591

Placed for          01/03/2014          Balance:            $161                Pay Status:     >In Collection<
collection:                              Date Updated:       07/30/2017
Responsibility:     Individual Account   Original Amount:    $161
Account Type:       Open Account         Original Creditor:  AT T (Cable/Cellular)
Loan Type:          COLLECTION           Past Due:           >$161<
                    AGENCY/ATTORNEY
```

(Remaining portion of tradeline omitted.)

35. Because the Debt is included in Plaintiff's Bankruptcy Case as stated above, the information described above was both false and misleading.

36. The account should have been reported by the Defendant, per the Metro 2 and its own internal policies and procedures, as "Petition for Chapter 13 Bankruptcy", "In Bankruptcy" or some similar designation.

37. The Defendant's policies and procedures required it to report Plaintiff's account using Consumer Information Indicator "D", under both the Metro 2 guidelines and its own policies, which would result in the correct status being reported.

38. The specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendant. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

39. The information reported by Defendant to TransUnion was both false and misleading in that a viewer of the report would reasonably conclude that the Debt being collected by Defendant was not included in Plaintiff's Bankruptcy Case and that Plaintiff is subject to continued collection activity, including legal process.

40. The false report made by Defendant to TransUnion was in furtherance of its efforts to collect its Debt from Plaintiff.

## Damages

41. Defendant had actual notice that the information it was reporting regarding Plaintiff to the various credit reporting agencies was false, deceptive, and misleading.

42. Accordingly, Defendant's conduct was willful.

43. As a result of Defendant's willful actions and omissions, Plaintiff is eligible for statutory damages.

44. Additionally, as a result of Defendant's actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendant's wrongful representations, frustration and anxiety as a result of the knowledge that Defendant is pursuing its collection strategy despite her Bankruptcy Case, and worry over the repercussions of Defendant's conduct.

45. As a result of the actions and omissions of Defendant, Plaintiff's actual damages also include the illegitimate suppression of her Fair Isaac Corporation ("FICO") credit score and other credit rating model scores.

46. The false information reported by Defendant creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's future credit-worthiness.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10)**

47. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

48. Defendant's provision of false and/or misleading information in connection with its attempts to collect the alleged Debt violated multiple

provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

49. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered actual damages. Plaintiff is, therefore, entitled to recover actual damages under 15 U.S.C. § 1692k.

50. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Defendant $1,000.00 in statutory damages and reasonable attorney's fees and costs.

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## O.C.G.A. § 10-1-393(a)

51. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

52. O.C.G.A. § 10-1-393(a) broadly prohibits unfair business practices.

53. It was unfair and deceptive for Defendant to falsely report the status of Plaintiff's account to third-parties in an effort to collect a debt that was scheduled in bankruptcy.

54. As pled above, Plaintiff was harmed by Defendant's unfair conduct.

11

55. Upon information and belief, Defendant regularly reports information to credit reporting agencies in an effort to collect outstanding debts.

56. Upon information and belief, reports to credit reporting agencies are Defendant's *modus operandi* for debt collection and are done on a wide scale.

57. Defendant's conduct amounts to an unfair business practice.

58. Defendant's conduct has implications for the consuming public in general and potential negative impact on the consumer marketplace.

59. Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiff of the Notice and Demand requirement of O.C.G.A. § 10-1-399(b).

60. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages, pursuant to O.C.G.A. § 10-1-399(a).

61. As a result of Defendant's willful and wanton violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages, pursuant to O.C.G.A. § 10-1-399(a).

62. Defendant's actions were intentional, rendering it liable for treble damages, pursuant to O.C.G.A. § 10-1-399(c).

63. Plaintiff is entitled to recover reasonable attorney's fees and expenses, pursuant to O.C.G.A. § 10-1-399(d).

## **TRIAL BY JURY**

64. Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) General, exemplary, and treble damages pursuant to O.C.G.A. §§ 10-1-399(a) & (c);

d.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1692k and O.C.G.A. §§ 10-1-399(d) and/or 13-6-11; and

e.) Such other and further relief as may be just and proper.

Respectfully submitted this 27th day of November, 2017.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Caitlin M. Berry
Georgia Bar No.: 761404
*cberry@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorneys*